COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Russell and AtLee
Argued at Richmond, Virginia

PERRY EDWARD JONES

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
FEBRUARY 2, 2016

v.      Record No. 0062-15-2

LORI GATES JONES

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Richard S. Wallerstein, Jr., Judge

John P. Walsh (Denbigh Law Center, on briefs), for appellant.

Brandy M. Poss (DeFazio Bal, P.C., on brief), for appellee.

This appeal concerns a Military Retired Pay Qualifying Division Order ("Order") entered

by the Circuit Court of Henrico County ("trial court") following the parties' divorce. Appellant

Perry Edward Jones ("husband"[1]) assigns four errors: (1) the Order conflicted with the

provisions of the parties' written property settlement agreement which was incorporated into the

final decree of divorce; (2) the trial court should instead have entered the Military Qualifying

Court Order husband drafted; (3) the trial court should have awarded husband attorney's fees and

costs; and (4) the trial court should have prohibited Leslie Shaner from testifying as an expert

witness for appellee Lori Gates Jones ("wife"). For the following reasons, we affirm in part,

reverse in part, dismiss in part, and remand.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Although the more accurate designations would be "former husband" and "former
wife," we use less cumbersome titles in this memorandum opinion for ease of reference and
comprehension.

## I. BACKGROUND

In December 2013, the parties entered into a Property Settlement Agreement ("Agreement") settling the issues of support and equitable distribution following their divorce. The Agreement was incorporated into the final decree of divorce entered on February 12, 2014.

A few months later, wife moved for the entry of a proposed order addressing the division of husband's military retirement. Her proposed order contained different language than the Agreement. Because of this, husband objected to wife's proposed order on the grounds that certain paragraphs created substantive rights not granted in the Agreement. Wife argued that her proposed order made only administrative or ministerial changes, and the additional language only effectuated the terms of the Agreement. Husband submitted an alternative proposed order. After a hearing, the trial court continued the matter and requested that the parties present evidence from expert witnesses to assist the court in resolving the matter. At the later hearing, wife presented the expert testimony of Leslie Shaner to explain the provisions of the proposed orders in the context of dividing military retirement benefits. Shaner formerly worked as an attorney with the law firm representing wife in the proceedings, and had drafted some provisions in wife's proposed order. The trial court, after making some modifications not pertinent to this appeal, entered wife's proposed order (the Order appealed here).

The portions of the Agreement relevant to this appeal are:

> **3. ENTIRE AGREEMENT**: Husband and Wife acknowledge that this agreement contains the entire understanding between Husband and Wife and that there are no representations, warranties, covenants or undertakings other than those expressly set forth herein.
>
>  . . . .
>
> **21. RETIREMENT BENEFITS**: (a) Wife shall receive one-half of the marital share of Husband's military retirement accounts/plans. Such division shall be done by QDRO, ADRO, or other required mechanism. The costs of preparing the paperwork shall be at Wife's expense. The Marital Share shall be a fraction, the numerator of

- 2 -

which is the number of reserve retirement points earned during the marriage and the denominator is the Husband's total number of reserve retirement points. If Husband has a further retirement component based upon creditable months of service, the Wife will also receive a similar one-half marital share of that benefit (with the numerator and denominator expressed in months of creditable service rather than reserve retirement points). Husband shall elect (or cause to be selected) participation in the Survivor Benefit Plan (SBP) of at least a 50% survivor benefit.

The Agreement contains no express indemnification clause.

## II. CHALLENGED PROVISIONS IN THE ORDER

"[O]n appeal, our standard of review for property settlement agreements is the same as for other contracts." Craig v. Craig, 59 Va. App. 527, 537, 721 S.E.2d 24, 28 (2012). "If the terms of the agreement are unambiguous, their meaning and effect are questions of law," id. at 537, 721 S.E.2d at 28-29, which we review *de novo*.

"[A]lthough 'Code § 20-109(A) empowers trial courts to modify a spousal support award, . . . Code § 20-109(C) expressly limits the court's authority . . . according to the terms of a stipulation or contract signed by the parties.'" Rutledge v. Rutledge, 45 Va. App. 56, 61-62, 608 S.E.2d 504, 507 (2005) (omissions in original) (quoting Blackburn v. Michael, 30 Va. App. 95, 100, 515 S.E.2d 780, 783 (1999)). An order "must be consistent with the substantive provisions of the original decree . . . ." Craig, 59 Va. App. at 539, 721 S.E.2d at 29 (quoting Williams v. Williams, 32 Va. App. 72, 75, 526 S.E.2d 301, 303 (2000)).

"[I]t is the function of the court to construe the contract made by the parties, not to make a contract for them." Id. at 536, 721 S.E.2d at 28 (quoting Irwin v. Irwin, 47 Va. App. 287, 293, 623 S.E.2d 438, 441 (2005)). "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." Id. "In determining the intent of the parties, courts will generally not infer covenants and promises which are not contained in the

written provisions." Boedeker v. Larson, 44 Va. App. 508, 519, 605 S.E.2d 764, 769 (2004)

(quoting Pellegrin v. Pellegrin, 31 Va. App. 753, 759, 525 S.E.2d 611, 614 (2000)).

### A. Anti-circumvention provisions

Husband objects to numerous terms in the Order. He argues that some provisions facially

conflict with the Agreement, and others amount to additional "representations, warranties,

covenants or undertakings" that violate paragraph three of the Agreement. Husband's most

substantive challenges concern "anti-circumvention" provisions (paragraphs 15,[2] 16,[3] 17,[4]

[2]    **15. Merger of Benefits and Indemnification**: The Member agrees not to merge the Member's disposable military retired pay with any other pension and not to pursue any course of action that would defeat the Former Spouse's right to receive a portion of the disposable military retired pay of the Member. The Member agrees not to take any action by merger of the military retirement pension so as to cause a limitation in the amount of the total retired pay in which the Member has a vested interest and, therefore, the Member will not cause a limitation of the Former Spouse's monthly payments as set forth above. If the Member becomes employed or otherwise has his military pension merged, which employment or other condition causes a merger of the Member's disposable military retired pay, the Member will pay to the Former Spouse directly the monthly amount provided in Paragraph 6, under the same terms and conditions as if those payments were made pursuant to the terms of this order.

[3]    **16. Direct Payment by Member**: If in any month, direct payment is not made to Former Spouse by DFAS [Defense Finance and Accounting Services] (or the appropriate military pay center) pursuant to the terms of this Order, Member shall pay the amounts called for above directly to Former Spouse within fourteen (14) days of notification from Former Spouse that she has not received direct payment from DFAS (or the appropriate military pay center). This includes any amounts received by the Member in lieu of disposable retired pay, including but not limited to, any amounts waived by Member in order to receive Veterans Administration (i.e., disability) benefits or any amounts received by Member as a result of an early-out provision, such as VSI [Voluntary Separation Initiative] or SSB [Special Separation Benefit] benefits.

[4]    **17. Actions by Member**: If Member takes any action that prevents, decreases, or limits the collection by Former Spouse of

19,[5] and 22[6] of the Order).  These provisions address actions husband must take and must not take because they purportedly would defeat wife's vested[7] right, under the Agreement, to one-half of the

the sums to be paid hereunder, he shall make payments to Former Spouse directly in an amount sufficient to neutralize, as to Former Spouse, the effects of the actions taken by Member.

[5] **19. Continued Jurisdiction**: The Court shall retain jurisdiction to enter such further orders as are necessary to enforce the award to spouse of the military retirement benefits awarded herein, including the recharacterization thereof as a division of Civil Service or other retirement benefits, to comply with the provisions contained above requiring said payments to Former Spouse by any means, including the application for a disability award or filing of bankruptcy, or if military or government regulations or other restrictions interfere with payments to Former Spouse as set forth herein.

[6] **22. Definition of Military Retirement**: For the purposes of interpreting this Court's intention in making the division set out in this Order, "military retirement" includes retired pay paid or to which Member would be entitled for longevity of active duty and/or reserve component military service and all payments paid or payable under the provisions of Chapter 38 or Chapter 61 of Title 10 of the United States Code, before any statutory, regulatory, or elective deductions are applied.  For purposes of calculating the Former Spouse's share of the benefits awarded to her by the Court, the marital property interests of the Former Spouse shall also include a pro-rata share of all amounts the Member actually or constructively waives or forfeits in any manner and for any reason or purpose, including, but not limited to, any waiver made in order to qualify for Veterans Administration or disability benefits.  It also includes a pro-rata share of any sum taken by member in lieu of or in addition to his disposable retired pay, including, but not limited to, exit bonuses, voluntary separation incentive pay (VSI), special separation benefit (SSB), or any other form of retirement benefits attributable to separation from military service.  Such pro-rata share shall be based on the same formula, percentage or amounts specified in Section 6 above, as applicable.  In the event that the DFAS will not pay the Former Spouse directly all or a portion of the benefits awarded to her herein, then Member shall be required to pay her directly in accordance with the terms and provisions set forth in Section 16 above.

[7] As this Court has stated, "property rights and interests [become] vested in the parties when they [agree] upon them, set them forth in a valid separation agreement, and [have] them

marital share of husband's military retirement accounts and plans. Wife maintains that these provisions merely effectuate the provision of the Agreement requiring that she receive one half of husband's military retirement pay. We disagree. Although we appreciate the unique issues raised by military retirement pay, and see the equities in preventing one party from undermining the contemplated terms of a property settlement agreement, binding husband to all of the anti-circumvention provisions in the Order does more than effectuate the terms of the parties' Agreement.

### 1. Background: Reduction of Military Retirement through Waiver or Merger

There are several mechanisms by which individuals with military retirement benefits can reduce retirement pay. Two are relevant here. First, military retirees can waive retirement benefits in order to receive other benefits, such as Veteran's Administration disability benefits. Second, military retirees can merge, or "roll over," their military retirement into a non-military retirement plan. The anti-circumvention provisions husband challenges attempt to prevent husband from waiving or merging benefits,[8] and provide wife with remedies in the event of

---

incorporated into their final divorce decree." Irwin, 47 Va. App. at 294, 623 S.E.2d at 441 (alterations in original) (quoting Himes v. Himes, 12 Va. App. 966, 970, 407 S.E.2d 694, 697 (1991)). Accordingly, wife has a vested right to one-half of the marital share of husband's military retirement accounts and plans under the Agreement.

[8] Both parties describe the Order as prohibiting both merger and waiver of retirement benefits. For several reasons, so shall this Court. However, we note that the anti-circumvention language appears to have been drafted to only prohibit merger. Specifically, in paragraph 15, husband "agrees" not to "pursue any course of action that would defeat the Former Spouse's right to receive a portion of the disposable military retired pay . . . ." Viewed in isolation, this would prohibit waiver for disability or other benefits, and thus, as explained below, could contravene federal law. However, paragraph 22 of the Order defines military retirement to exclude those benefits waived or forfeited for disability benefits. It instead defines those waived benefits as "marital property interests," a term the Agreement provides no default method for allocating. The anti-circumvention provisions are form language found in other sources, see, e.g., Blythe v. Blythe, 2004-Ohio-575 (Ct. App. February 4, 2004), perhaps explaining the discrepancy. Regardless, because we find the trial court erred in including injunctive language, whatever its scope, we need not resolve this issue.

- 6 -

waiver or merger. In our analysis, we differentiate between those anti-circumvention provisions which prohibit husband from waiving or merging benefits (injunctive) from those requiring him to compensate wife in the event of waiver or merger (indemnifying).

### 2. Injunctive Provisions

Paragraph 15, in part, prohibits husband from merging or waiving his retirement benefits. Understandably, wife prefers the administrative ease of prohibiting husband from taking these actions, as opposed to attempting to recover from him after the fact, should it be necessary. However, the Agreement provides her no right to do so. The parties could have foreseen the possibility of either ex-spouse attempting to reduce the amount owed to the other, regardless of their understanding the specific means by which one could do so. Although the absence of specific clauses in the Agreement addressing "merger" or "waiver" of retirement benefits is not dispositive, the parties failed even to include any broader provisions that might cover such actions. For example, in Owen v. Owen, 14 Va. App. 623, 419 S.E.2d 267 (1992), the parties' property settlement agreement provided not only that the husband would not merge his military retirement with any possible future government pension, but also that he would not "take any action so as to defeat the Wife's right to share in the monthly retirement benefits as set forth in this Agreement." Id. at 627, 419 S.E.2d at 269. Clearly, even without any knowledge of the intricacies of military retirement, the parties here could have anticipated the risk of circumvention and included a comparable clause in the Agreement. They did not; instead, wife seeks to tack on such a provision after the fact. We will not "infer covenants and promises which are not contained in the written provisions." Boedeker, 44 Va. App. at 519, 605 S.E.2d at 769 (quoting Pellegrin, 31 Va. App. at 759, 525 S.E.2d at 614). Wife is not entitled to receive remedies for which she failed to contract.

- 7 -

Moreover, although the parties could have *agreed* to anti-circumvention provisions, <u>see</u> <u>Owen</u>, 14 Va. App. at 627, 419 S.E.2d at 269, there are grave problems with the trial court ordering husband not to waive his retirement for disability benefits in the absence of such an agreement. "[A] state court [likely] cannot actually order a service member not to waive his military retirement benefits in favor of disability or other replacement benefits. Such an order probably violates federal law."[9] 2 <u>Brett R. Turner</u>, <u>Equitable Distribution</u> § 6.10, at 67-68 (3d ed. 2005 & Supp. 2015-2016) (citing <u>Cunningham v. Cunningham</u>, 615 S.E.2d 675, 681-82 (N.C. Ct. App. 2005); <u>Freeman v. Freeman</u>, 133 S.W.3d 277, 280 (Tex. App. 2003)). The court may "order the service member to *compensate* the former spouse for any harm caused by the election," but may not "order the service member not to make the election in the first place." <u>Id.</u> at 68. For these reasons, the trial court erred in including injunctive provisions in the Order.

### 3. Indemnification

Paragraphs 15, 16, and 17 all contain language that serves to indemnify wife in the event she fails to receive her share of husband's retirement benefits. The parties, however, included no indemnification clause in their Agreement. States differ in their treatment of a former spouse whose share of military retirement benefits is reduced by the other spouse's waiver of retirement in favor of disability payments when the property settlement agreement does not expressly prohibit such a waiver and contains no indemnification provision. Many allow relief; some do not. <u>See</u> <u>Merrill v. Merrill</u>, 284 P.3d 880, 884 n.2 (Ariz. Ct. App. 2012) (listing cases).

---

[9] This is one of many vital issues the parties failed either to recognize or raise both on appeal and before the trial court. Military retirement pensions are subject to federal statute, <u>see</u> 10 U.S.C. § 1408 ("Former Spouses' Protection Act"), and controlled by United States Supreme Court authority, <u>see</u> <u>Mansell v. Mansell</u>, 490 U.S. 581 (1989). Under this authority, "when military disability benefits are received in lieu of retirement pay, or veterans' disability benefits administered by the V.A. are received according to the required waiver of an equal amount of military retirement pay, the benefits are not subject to division by the state courts under the Act." <u>Owen</u>, 14 Va. App. at 626, 419 S.E.2d at 269 (quoting <u>Lambert v. Lambert</u>, 10 Va. App. 623, 627, 395 S.E.2d 207, 209 (1990)).

Although we have not addressed the exact issue here, whether implied indemnification is appropriate *prior* to one party's acting to reduce their retirement benefit, case law provides some guidance. For example, this Court has previously held that one party should recover when their former spouse reduced his retirement benefit (by accepting a career status bonus) prior to the property settlement agreement being incorporated into a divorce decree. See Boedeker, 44 Va. App. at 526, 605 S.E.2d at 773. In an unpublished opinion,[10] we have also upheld a trial court's order that an ex-husband, who waived retirement benefits to receive disability benefits, pay his ex-wife the amount by which his waiver reduced her 50% share (pursuant to an incorporated property settlement agreement) in his retirement benefits. Hubble v. Hubble, No. 2015-01-4, 2002 Va. App. LEXIS 459 (Va. Ct. App. Aug. 6, 2002). Although these holdings do not control the outcome here, their reasoning is applicable. Wife would be able to recover the difference were husband to merge or waive benefits.

The trial court correctly found that the Agreement plainly manifests the intent for wife to receive one-half of husband's military retirement benefits.[11] Wife's interest in such benefits vested once the Agreement was incorporated into the final decree of divorce. Accordingly, were she to receive a reduced sum on account of husband's actions, it would amount to a unilateral modification of the agreement, and she would be entitled to relief. See Higgins v. McFarland, 196 Va. 889, 895, 86 S.E.2d 168, 172 (1955). Under the Agreement, and further conceded by

---

[10] "Unpublished opinions of this Court, while having no precedential value, are nevertheless persuasive authority." Otey v. Commonwealth, 61 Va. App. 346, 351 n.3, 735 S.E.2d 255, 258 n.3 (2012).

[11] We are not determining the parties' intent at the time they entered the agreement (a question of fact requiring the review of parol evidence, only appropriate if the Agreement was first deemed ambiguous, see Shoup v. Shoup, 31 Va. App. 621, 625, 525 S.E.2d 61, 63 (2000), but rather the intent manifested within the four corners of the Agreement. See Code § 20-107.3(K)(4) (granting the court "the authority to . . . [m]odify any order . . . to revise or conform its terms so as to effectuate the expressed intent of the order"). This inquiry is thus a question of law we review *de novo*.

wife, husband would not be held responsible for making such payments unless he first received them, so his concerns that the Order requires him to serve as a "guarantor" to the government in the event of a shut-down or other event are unfounded. Accordingly, the trial court did not err in including language in the Order providing that husband would indemnify wife in the event of merger or waiver.

### B.  Other Challenged Provisions

Husband challenges two final provisions that serve a purpose other than preventing husband from merging or waiving retirement benefits. Paragraph 7 of the Order states in pertinent part, "The level of [Survivor Benefit Plan] coverage required for the Former Spouse shall be that which will provide her with the same benefit payments after the Member's death that she was eligible to receive or receiving before his death." Husband argues that this "directly conflicts" with the Agreement, which states that "Husband shall elect (or cause to be selected) participation in the Survivor Benefit Plan (SBP) of at least a 50% survivor benefit."

Husband does not explain how these terms conflict. "Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented.' Unsupported assertions of error 'do not merit appellate consideration.'" Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008) (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992)). "The Supreme Court concluded that 'when a party's 'failure to strictly adhere to the requirements of Rule 5A:20(e)' is significant, 'the Court of Appeals may . . . treat a question presented [now assignment of error] as waived.'" Atkins v. Commonwealth, 57 Va. App. 2, 20, 698 S.E.2d 249, 258 (2010) (quoting Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008)). Accordingly, because husband's conclusory arguments fail to satisfy Rule 5A:20(e), we affirm the trial court's including paragraph 7 in the Order.

Second, paragraph 23 states that husband will provide thirty days' notice to wife when he retires. He argues that this is a specific undertaking not provided for in the Agreement. We see no merit in this argument. This provision is a reasonable and minimally burdensome way to address a foreseeable logistical issue, given that it could be a decade or more before husband retires. Furthermore, the Agreement states that the parties would execute and deliver documents "which may reasonably be required to give full force and effect" to the Agreement. Accordingly, we find no error in the trial court including paragraph 23.

### C. Husband's Proposed Order

Husband also argues that the trial court should have entered the alternative order he submitted. Even if we were to conclude that husband's proposed order did not conflict with the Agreement, husband offers no argument as to why a trial court must enter a proposed order simply because it is harmonious. Again, husband's argument fails to satisfy Rule 5A:20(e), as described above. See Jones, 51 Va. App. at 734, 660 S.E.2d at 345. Because he includes no principles of law or authorities to support his contention, we have no basis for which to conclude the trial court should have entered husband's proposed order. Thus, husband has waived the issue.

### III. ATTORNEY'S FEES AND COSTS

We have no jurisdiction to review husband's third assignment of error, as the trial court had not entered a final order resolving the dispute over attorney's fees and costs at the time of appeal. As pertinent to this matter, "this Court has appellate jurisdiction over *final* decrees [and orders] of a circuit court in domestic relations matters arising under Titles 16.1 or 20, and any interlocutory decree or order involving the granting, dissolving, or denying of an injunction or 'adjudicating the principles of a cause.[']" Horn v. Horn, 28 Va. App. 688, 692, 508 S.E.2d 347, 349 (1998) (emphasis added) (quoting Code § 17.1-405(3)(f) and (4)). The parties concede that the trial court

- 11 -

never ruled upon or issued a final order on the issue of attorney's fees and costs. Accordingly, the issue is not properly before us.

## IV. EXPERT WITNESS TESTIMONY

Husband argues that the trial court's admission of Shaner's expert testimony was "unnecessary and improper," but cites no rule of law to support his argument. Yet again, Rule 5A:20(e) precludes our considering this argument. See Jones, 51 Va. App. at 734, 660 S.E.2d at 345. Because husband provides no supporting legal argument or authority to support his position that the trial court erred in admitting Shaner's expert testimony, and because we find that this omission is significant, we conclude that this argument is waived pursuant to Rule 5A:20(e).[12]

## V. CONCLUSION

We affirm the trial court's refusal to enter husband's proposed order, and its consideration of Shaner's expert testimony. We dismiss the assignment of error regarding attorney's fees and costs. We deny wife's request for an award of attorneys' fees and costs incurred in litigating this appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). The matter is reversed for the reasons stated in Part II.A, and remanded for entry of a revised order that comports with this memorandum opinion.

Affirmed in part,<br>
reversed and remanded in part, and<br>
dismissed in part.

---

[12] Husband's argument also fails on the merits. "The standard of review on appeal where the admissibility of expert testimony is challenged is whether the trial court abused its discretion." Kern v. Commonwealth, 2 Va. App. 84, 86, 341 S.E.2d 397, 398 (1986). In this matter, the trial court ordered the parties to present expert testimony to explain the nuances of military retirement and anti-circumvention provisions. Only wife did so. The testimony was relevant and presumably helpful to the court. The trier of fact was best situated to evaluate Shaner's credibility and any bias she may have had. In addition, husband conceded at oral argument before this Court that, even if this Court were to adopt his view, it would not affect the ultimate outcome of the case. For these reasons, the trial court did not abuse its discretion.